USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 05/31/3017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LARRY FERNANDEZ,

                Petitioner,

v.

WILLIAM ERCOLE,

                Respondent.

No. 14-CV-2974 (HBP) (RA)

OPINION & ORDER ADOPTING
REPORT & RECOMMENDATION

---

RONNIE ABRAMS, United States District Judge:

Petitioner Larry Fernandez, proceeding *pro se*, petitions for a writ of habeas corpus challenging his New York state convictions for attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. Before the Court is the Report and Recommendation of Magistrate Judge Pitman, which recommends that the Court deny Fernandez's petition. Also before the Court are Fernandez's motions for leave to amend his petition and for a stay of this petition. For the reasons set forth below, the Court adopts Judge Pitman's thorough and well-reasoned Report and Recommendation, denies Fernandez's motion for leave to amend, and denies Fernandez's motion for a stay of this petition.

## BACKGROUND[1]

On or about September 16, 2005, Fernandez shot Martin Santos in the Bronx. *See* Trial Tr. at 161–63, 167. Santos suffered serious injuries to his right wrist and left leg, which was subsequently amputated from the thigh down. *See id.* at 178, 334–42. On June 27, 2008, a jury

---

[1] The Court assumes familiarity with the facts underlying this case, *see* Report at 2–6, and recites only those facts relevant to Fernandez's present objections and motions.

convicted Fernandez of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. *See id.* at 468–69. Fernandez was sentenced to determinate terms of imprisonment of twenty-five years for attempted murder and assault and fifteen years for criminal possession of a weapon in the second degree, to be followed by a five-year term of post-release supervision, and an indeterminate term of imprisonment of two to seven years for criminal possession of a weapon in the third degree. *See* Decl. of Marianne Stracquadanio ¶ 6 (Dkt. 8).[2] His sentences were to run concurrently but consecutively to a previously imposed federal sentence. *See id.*

Fernandez appealed his conviction to the Appellate Division of the Supreme Court of New York, First Department. Fernandez argued that the trial court violated his right to a fair trial by admitting evidence that he sold marijuana and by admitting photographs of Santos's left leg. *See* Stracquadanio Decl. Ex. 1 at 18–33. On January 31, 2013, the First Department rejected both claims. *See* Stracquadanio Decl. Ex. 3 at 78–79. The First Department reasoned that the trial court was within its discretion to admit evidence that Fernandez sold marijuana to Santos, which "provided necessary background information and tended to place aspects of the victim's testimony in a believable context" and whose prejudicial effect, if any, "was outweighed by [its] probative value." *Id.* at 78. The First Department also determined that the trial court did not abuse its discretion in admitting photographs of Santos's injuries, which "were relevant to establish elements of the charges, and were not unduly gory or inflammatory." *Id.* at 79. Fernandez applied for leave to appeal to the New York Court of Appeals, which denied his application on April 29,

---

[2] Respondent represents that it has been unable to obtain Fernandez's state-court sentencing records but submits a sworn declaration describing the sentence imposed. *See* Stracquadanio Decl. ¶ 4. Fernandez does not argue that Respondent's description of his sentence is inaccurate, and his petition does not challenge his sentence. Accordingly, for purposes of this opinion, the Court accepts Respondent's characterization of Fernandez's sentence as true.

2

2013. *See People v. Fernandez*, 988 N.E.2d 892 (N.Y. 2013).

On April 21, 2014, Fernandez filed the instant habeas petition, which challenged the admission of evidence that he sold marijuana and photographs of Santos's injuries at trial. *See* Pet. (Dkt. 2). Judge Pitman issued a Report and Recommendation (the "Report"), recommending that the Court deny Fernandez's petition. *See* Report (Dkt. 13). Fernandez timely filed objections to the Report, *see* Obj. (Dkt. 16), to which Respondents did not respond.

Fernandez then moved for leave to amend his petition to include unexhausted claims. *See* Mot. to Amend (Dkt. 18). Specifically, Fernandez sought to add claims that the prosecution violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose (1) statements of an eyewitness, Vannesa Tejada, to law enforcement officials following the shooting, and (2) Santos's prior arrests for criminal possession of a weapon and criminal sale of marijuana. *See id.* Fernandez also sought to add a claim that the prosecution violated his Confrontation Clause rights by refusing to permit cross-examination of Tejada. *See id.* In a separate motion, Fernandez requested a stay of his habeas petition so that he could exhaust these claims in state court. *See* Mot. to Stay (Dkt. 19).

## DISCUSSION

### A. Merits of the Petition

Fernandez's petition challenges the state court's admission of evidence regarding his history of dealing marijuana and photographs of Santos's injuries. The Court concludes that Fernandez's claims lack merit and adopts Judge Pitman's recommendation to deny the petition.

#### 1. Legal Standards

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under Federal Rule of

Civil Procedure 72(b), a party may make "specific written objections to the proposed findings and recommendations" within fourteen days of being served with a copy of a magistrate judge's recommended disposition. Fed. R. Civ. P. 72(b)(2). A district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "However, when the objections simply reiterate previous arguments or make only conclusory statements, the Court should review the report for clear error." *George v. Prof'l Disposables Int'l, Inc.*, No. 15-CV-3385 (RA), 2016 WL 6779957, at *1 (S.D.N.Y. Nov. 16, 2016) (quoting *Brown v. Colvin*, 73 F. Supp. 3d 193, 197 (S.D.N.Y. 2014)). "Objections of *pro se* litigants are generally accorded leniency and construed to raise the strongest arguments that they suggest." *McNeil v. Capra*, No. 13-CV-3048 (RA), 2015 WL 4719697, at *3 (S.D.N.Y. Aug. 7, 2015) (citation omitted). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument." *Id.* (citation omitted).

Under the Antiterrorism and Effective Death Penalty Act of 1995 ("AEDPA"), a federal court may not grant a habeas petition on the basis of a claim adjudicated on the merits in state court unless the adjudication of that claim resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court decision is 'contrary to . . . clearly established Federal law, as determined by the Supreme Court' when 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a

set of materially indistinguishable facts.'" *Carmichael v. Chappius*, 848 F.3d 536, 544 (2d Cir. 2017) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "A state-court decision is an 'unreasonable application of' clearly established federal law 'if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case.'" *Fuentes v. T. Griffin*, 829 F.3d 233, 244–45 (2d Cir. 2016) (alterations omitted) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Ultimately, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).[3]

In general, "[i]ssues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." *Nunez v. Conway*, 923 F. Supp. 2d 557, 568 (S.D.N.Y. 2013) (citation omitted). "Thus, in evaluating a habeas petitioner's challenge to a state court's evidentiary ruling, a habeas court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial." *Alston v. Griffin*, No. 12-CV-8092 (CS) (PED), 2014 WL 6663458, at *15 (S.D.N.Y. Oct. 16, 2014) (citing *Perez v. Phillips*, 210 F. App'x 55, 57 (2d Cir. 2006) (summary order), and *Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir. 2003)).

---

[3] The court examines the last-reasoned state-court decision, which in this case is the decision of the First Department. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

## 2. Evidence of Uncharged Crimes

Fernandez first challenges the state court's decision to admit evidence that he sold marijuana. *See* Obj. at 2–9. Judge Pitman correctly determined that this decision was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts. *See* Report at 13–16.[4]

New York law generally prohibits the introduction of evidence of prior uncharged crimes. *See People v. Molineux*, 61 N.E. 286, 293–94 (N.Y. 1901); *see also People v. Rojas*, 760 N.E.2d 1265, 1267 (N.Y. 2001). "Where, however, evidence of a defendant's bad acts or uncharged crimes is 'relevant to some material fact in the case, other than the defendant's propensity to commit the crime charged, it is not to be excluded merely because it shows that the defendant had committed other crimes.'" *People v. Israel*, 43 N.E.3d 728, 733 (N.Y. 2015) (quoting *People v. Cass*, 965 N.E.2d 918, 924 (N.Y. 2012)); *accord Liggan v. Senkowski*, No. 11-CV-1951 (RA), 2014 WL 5315029, at *4 (S.D.N.Y. Oct. 17, 2014) (citing *Rojas*, 760 N.E.2d at 1267 & n.2). Evidence of a defendant's prior bad acts or uncharged crimes may be admitted if it tends to establish, for example:

> (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial.

*People v. Denson*, 42 N.E.3d 676, 681 (N.Y. 2015) (quoting *Cass*, 965 N.E.2d at 924).

The First Department reasonably found evidence that Fernandez sold marijuana admissible under New York law. As the First Department explained, this evidence "provided necessary

---

[4] Because Fernandez's objections to the Report largely reiterate arguments presented in his original petition, the Court would ordinarily review his objections for clear error. *See, e.g., Quinn v. Stewart*, No. 10-CV-8692 (PAE), 2012 WL 1080145, at *4 (S.D.N.Y. April 2, 2012). Here, however, the Court need not decide whether a de novo or clear error standard applies to Fernandez's objections, as it finds no error, clear or otherwise, in the Report's analysis of his claims.

background information and tended to place aspects of the victim's testimony in a believable context." Stracquadanio Decl. Ex. 3 at 78. In light of the well-established connection between drug dealing and firearms, this evidence provided context for why Fernandez had such easy access to a gun, which he grabbed from a nearby flower planter to shoot Santos.[5] The First Department reasonably determined that, without this evidence, the jury may have been less likely to believe the prosecution's claim that Fernandez encountered a friend on the street, grabbed a firearm, and shot him at close range with minimal provocation. *See id.*; *see also* Pretrial Tr. at 214–15. The evidence that Fernandez sold marijuana to Santos thus filled an important evidentiary gap in the prosecution's narrative. Accordingly, the Court finds no error in the First Department's determination that evidence of Fernandez's history of selling marijuana to Santos was admissible under New York law.[6]

Even if the admission of this evidence violated New York law, Fernandez has not established that it denied him a fair trial under clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). As Judge Pitman explained, and as a number of courts in this District have observed, the Supreme Court has not held that the admission of evidence of a defendant's uncharged crimes to show the defendant's criminal propensity violates the Due Process Clause. *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity

---

[5] The trial court explained that guns "are associated logically drug dealing. That is not a stretch. We all know that." *See* Pretrial Tr. at 218. This view is not objectively unreasonable. Indeed, as Judge Pitman noted, the Second Circuit has expressly agreed with it. *See United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) ("It is axiomatic that drug dealing and guns go hand in hand.").

[6] At trial, Santos testified—without further objection from defense counsel—that he frequently bought marijuana from Fernandez. *See* Trial Tr. at 140 (Q: "And, how would you describe for the Jury your relationship with the defendant?"; A: "I bought marijuana from him. Sometimes after work, when I bought it, I would stop and have a conversation with him, and that was pretty much how I knew him, from selling marijuana.").

to commit a charged crime."); *see also, e.g., Williams v. Jacobson*, No. 15-CV-5319 (ER) (JLC), 2016 WL 4154700, at *20 (S.D.N.Y. Aug. 5, 2016) ("[T]here is no clear Supreme Court precedent holding that the admission of propensity evidence (even if prejudicial) is unconstitutional."), *report and recommendation adopted*, 2016 WL 7176648 (S.D.N.Y. Dec. 7, 2016); *Stenson v. Heath*, No. 11-CV-5680 (RJS) (AJP), 2012 WL 48180, at *15 (S.D.N.Y. Jan. 10, 2012) ("[E]ven assuming [the petitioner] was able to successfully argue that [the state court] misapplied New York law in allowing evidence of uncharged crimes, he still would not be eligible for habeas relief because there is no Supreme Court precedent that such evidence gives rise to a constitutional violation."), *report and recommendation adopted*, 2015 WL 3826596 (S.D.N.Y. June 19, 2015); *Parker v. Woughter*, No. 09–CV–3843 (GEL), 2009 WL 1616000, at *2 (S.D.N.Y. July 9, 2009) ("[P]etitioner cites no Supreme Court case, and the Court is aware of none, holding that the admission of evidence of uncharged crimes violates the Due Process Clause of the Fourteenth Amendment."); *Jones v. Conway*, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006) ("[T]he issue of whether an admission of uncharged crimes can ever constitute a violation of the Due Process Clause has not been decided by the Supreme Court."). Accordingly, even if the First Department erred in determining that evidence of Fernandez's uncharged crimes was admissible under state law, Fernandez has not demonstrated that the admission of this evidence violated his right to a fair trial under the Supreme Court's precedents. *See* 28 U.S.C. § 2254(d)(1); *Smith v. Wenderlich*, 826 F.3d 641, 649 (2d Cir. 2016) ("When there is no Supreme Court holding on a given issue, 'it cannot be said that the state court unreasonably applied clearly established Federal law' within the meaning of AEDPA." (alterations omitted) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006))).

### 3. Photographs of Santos's Injuries

Fernandez next claims that the state court denied him a fair trial by admitting two photographs of Santos's injuries. *See* Obj. at 9. As discussed above, these photographs depicted Santos's injured leg before and after amputation. *See* Trial Tr. at 82; *see also* Addendum to Report & Recommendation (Dkt. 22). The Court again agrees with Judge Pitman that the First Department did not violate clearly established federal law or make an unreasonable determination of the facts in rejecting this claim.

As Judge Pitman explained, New York law permits the admission of photographs of an injured or deceased victim "if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered," even when they "portray a gruesome spectacle and may tend to arouse passion and resentment against the defendant in the minds of the jury." *People v. Pobliner*, 298 N.E.2d 637, 645 (N.Y. 1973); *see also, e.g., Rhodes v. Artus*, No. 09-CV-4251 (ER) (PED), 2016 WL 7176645, at *6 (S.D.N.Y. Dec. 8, 2016); *Stover v. Ercole*, No. 08-CV-6737 (SAS), 2011 WL 814710, at *7 (S.D.N.Y. Mar. 8, 2011). Thus, under New York law, "[p]hotographic evidence should be excluded only if its *sole purpose* is to arouse the emotions of the jury and to prejudice the defendant." *Pobliner*, 298 N.E.2d at 645 (emphasis added).

The First Department reasonably determined that the photographs were admissible under New York law. The First Department found that Santos's injuries were "relevant to establish elements of the charges." Stracquadanio Decl. Ex. 3 at 79. In particular, these photographs tended to show that Santos suffered "serious physical injury," a necessary element of the state's charge of assault in the first degree. *See* N.Y. Penal L. § 120.10. Moreover, the Court finds nothing objectively unreasonable in the First Department's determination that these photographs were not

"unduly gory or inflammatory." Stracquadanio Decl. Ex. 3 at 79. Accordingly, the Court agrees with Judge Pitman that the state court was reasonable in finding the photographs admissible under New York law. *See, e.g., People v. Coleman*, 48 N.Y.S.3d 478, 480 (2d Dep't 2017) (holding that the trial court acted within its discretion in admitting "an autopsy photograph of the victim's skull with the scalp removed" in a trial for gang assault in the first degree, as the photograph was not "excessively gruesome" and was introduced "to corroborate the testimony of the medical examiner"); *People v. Keegan*, 20 N.Y.S.3d 796, 799 (4th Dep't 2015) (holding that the trial court's admission of photographs of an infant victim's injuries was not improper because "[i]n order to prove that defendant committed the offense of assault in the first degree, the People were required to establish that defendant acted recklessly and with a depraved indifference to human life, and thereby caused serious physical injury to the infant victim" (citing N.Y. Penal L. § 120.10)); *People v. Nieves*, 720 N.Y.S.2d 34, 35 (1st Dep't 2001) (holding that the trial court properly admitted "a series of photographs depicting the victim's injuries" in a trial for assault in the first degree, as the photographs "were not inflammatory and were relevant to prove that the injuries resulted in permanent disfigurement").

Even if the First Department erred in determining that the photographs were admissible under New York law, Fernandez has not demonstrated that their admission denied him a fair trial under the Supreme Court's precedents. Fernandez has cited no Supreme Court case, and the Court has found none, holding that the admission of photographic evidence may render a trial fundamentally unfair. Indeed, the Eighth Circuit has noted that "[t]he Supreme Court's guidance in this area is quite general," and "the Supreme Court has never held that the admission of indisputably relevant evidence amounts to a denial of due process." *Middleton v. Roper*, 498 F.3d 812, 820–21 (8th Cir. 2007). Moreover, before and after AEDPA was enacted, several other

circuits have held the admission of photographs of a victim does not violate due process, at least when they are relevant to an issue in dispute and not excessively gruesome. *See, e.g., Wilson v. Sirmons*, 536 F.3d 1064, 1114–15 (10th Cir. 2008) (holding that the admission of a gruesome photograph of a murder victim's body did not render a capital murder trial fundamentally unfair under AEDPA, where the photographs were probative of the attacker's intent to kill and permitted the medical examiner to analyze the cause of the victim's injuries), *reinstated sub nom. Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 789–90 (6th Cir. 2003) (holding that a state court's rejection of a due process challenge to "the admission of multiple photographs of [a victim's] corpse was not an unreasonable application of federal law as articulated by the Supreme Court"), *supplemented on denial of reh'g*, 348 F.3d 174; *Gomez v. Ahitow*, 29 F.3d 1128, 1139–40 (7th Cir. 1994) (holding that the admission of "several 'gruesome' photographs of [the victim's] body at the scene of the homicide" did not deny the defendant a fair trial, even though the "only conceivable reason for placing them in evidence was to inflame the jury"); *cf. Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir. 1992) ("The introduction of graphic photographic evidence rarely renders a proceeding fundamentally unfair."). At a minimum, therefore, the Court cannot conclude that there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Richter*, 562 U.S. at 102.

In sum, the Court rejects Fernandez's objections to the Report. The Court has reviewed the remainder of the Report for clear error and, finding none, adopts the Report and Recommendation in its entirety.

B.  **Motion for Leave to Amend**

Fernandez also requests leave to amend his petition to include unexhausted claims. This

11

request is denied.

Under AEDPA, a federal habeas petition must be filed within one year of the latest of four dates, including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Fernandez does not dispute that this one-year period has passed: his conviction became final on or about July 28, 2013, which was his deadline to seek direct review of the New York Court of Appeals' denial of his leave to appeal via a writ of certiorari from the United States Supreme Court. *See id.* Accordingly, AEDPA's one-year statute of limitations expired on or about July 28, 2014. *See id.*[7]

Because the statute of limitations has passed, Fernandez's new claims are untimely unless they relate back to his original petition under Federal Rule of Civil Procedure 15(c). Rule 15(c) provides that an "amendment to a pleading relates back to the date of the original pleading" when, *inter alia*, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the habeas context, an amendment relates back only where both the original and amended petitions "state claims that are tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). An amended habeas petition does not, however, "relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. Under this standard, it is not sufficient for a newly asserted claim to simply arise from the "same

---

[7] Under 28 U.S.C. § 2244(d)(1)(D), AEDPA's 1-year statute of limitations may begin to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," provided that this date is the latest of the four dates identified in Section 2244(d)(1). *See* 28 U.S.C. § 2244(d)(1)(D). Here, Fernandez claims that he received "various documents" related to one of his newly asserted claims as recently as May 2016. *See* Mot. to Amend at 17–18. However, as discussed below, Fernandez discovered the "factual predicate" of his newly asserted claims no later than 2008, more than six years before he filed this petition. 28 U.S.C. § 2244(d)(1)(D). Thus, Fernandez cannot claim that his newly asserted claims are timely under Section 2244(d)(1)(D).

12

trial, conviction, or sentence" as those claims asserted in the original petition. *Id.* at 662–64.

Here, the unexhausted claims Fernandez seeks to assert do not arise from the same "core of operative facts" as those raised in his original petition. The original petition asserts claims for due process violations on the basis of the trial court's admission of evidence regarding Fernandez's history of dealing marijuana and photographs of Santos's injuries. The proposed amendments, by contrast, assert *Brady* violations on the basis of the prosecution's failure to disclose evidence of an eyewitness's statement and Santos's prior arrests, as well as a Confrontation Clause claim based on the trial court's failure to permit cross-examination of the eyewitness. Fernandez's original petition did not address, even in general terms, the eyewitness's testimony or Santos's prior arrests. These newly asserted claims are thus "supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650. Consequently, these newly asserted claims do not relate back to the date of his original petition under Rule 15(c) and are untimely under Section 2244. *See, e.g., Scott v. Rock*, No. 10-CV-5989 (SLT), 2017 WL 105907, at *6 (E.D.N.Y. Jan. 10, 2017) (finding that an amended petition asserting claims for ineffective assistance of counsel and for defects in a lineup procedure did not relate back to the original petition, which asserted claims for the denial of a fair trial, a *Brady* violation, and a *Batson* challenge); *Ermichine v. United States*, No. 06-CV-10208 (LAP) (JL), 2011 WL 1842951, at *12 (S.D.N.Y. May 12, 2011) (finding that an amended petition asserting an actual innocence claim did not relate back to the original petition, which asserted claims for the denial of counsel of choice and ineffective assistance of counsel); *Kirk v. Burge*, 646 F. Supp. 2d 535, 551 (S.D.N.Y. 2009) (denying relation back where "[n]one of the new ineffective assistance claims have any factual connection to the claims in the original petition," which asserted claims for, *inter alia*, a speedy trial violation and excessive sentencing).

13

## C. Motion for Stay of the Petition

Fernandez also moves to stay this habeas petition while he exhausts his newly asserted claims in state court. In the context of "mixed petitions" raising both exhausted and unexhausted claims, "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). "Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.* Here, a stay is not warranted because Fernandez's petition does not include unexhausted claims: as discussed above, his newly asserted claims do not relate back to his original petition, leaving a petition with only exhausted claims.

Even if Fernandez's newly asserted claims did relate back to the original petition, he has not demonstrated "good cause" for failing to first exhaust these claims in state court. At the latest, Fernandez became aware of the facts underlying these claims during or in the immediate aftermath of his 2008 trial. In particular, Fernandez's trial counsel learned of Tejada's statements to law enforcement no later than March 20, 2008, two days after his trial began but while trial was ongoing, *see* Trial Tr. at 267,[8] and discovered Santos's prior arrests no later than April 8, 2008, six days after the jury returned his guilty verdicts, *see* Mot. to Amend at 11–13.[9] Fernandez has

---

[8] At trial, shortly after defense counsel raised a *Brady* claim related to Tejada's statements, the court told defense counsel: "You have this *Brady* material in time to use at trial. You can call Miss Tejada." Trial Tr. at 267. The trial court also told defense counsel that it would be "happy to grant" an adjournment to investigate any *Brady* issue related to Tejada's statements. *Id.* at 271. In response to the court's questions, defense counsel confirmed that he had had an opportunity to speak to Tejada and that she would not testify. *See id.* at 350 ("The Court: Just to make the record clear, did you have an opportunity to speak with that Vanessa witness yesterday? Mr. DeMarco: Yes, Judge. The Court: And she's not going to testify? Mr. DeMarco: And she's not going to testify.").

[9] In a decision and order dated June 20, 2008, the trial court denied Fernandez's motion to set aside his verdict on the basis of the prosecution's alleged failure to disclose Santos's prior arrests. *See* Mot. to Stay Ex. A. The trial court determined that the prosecution did not have knowledge of Santos's prior arrests and thus had no duty to disclose information regarding these arrests. *See id.* at 2–3. Specifically, the trial court found that, in compliance with New York law, records of Santos's prior arrests "were properly sealed

offered no explanation for failing to raise his *Brady* claim regarding Tejada's statements in his original petition. With respect to his *Brady* claim regarding Santos's prior arrests, Fernandez asserts that he did not receive "various documents" relating to the arrests until May 2016, when his wife received the documents from the Bronx County Clerk's Office and delivered them to him in prison. *See* Mot. to Amend at 17–18. Less than two weeks after his trial, however, Fernandez filed a motion for a new trial, in which he specifically alleged that he had received Santos's arrest records, including the criminal complaints, in April 2008—approximately six years before he filed this petition. *See id.* at 11–12. Fernandez does not claim that the records he received in May 2016 differ in substance, if at all, from those he had discovered immediately after his trial in 2008. Nor does Fernandez claim that he could not have asserted a *Brady* claim in his original habeas petition on the basis of the records he had previously obtained. Thus, even if Fernandez did not receive certain records supporting his *Brady* claim until May 2016, he has not demonstrated good cause for failing to assert this claim in his original habeas petition. Accordingly, even if Fernandez's petition were amended to include his unexhausted claims, Fernandez has not demonstrated that a stay of this petition would be proper. *See, e.g., Holguin v. Lee*, No. 13-CV-1492 (LGS) (JLC), 2013 WL 3344070, at *2 (S.D.N.Y. July 3, 2013) (denying stay for lack of good cause where petitioner was aware of underlying facts at the conclusion of trial); *Spells v. Lee*, No. 11-CV-1680 (KAM), 2012 WL 3027865, at *6 (E.D.N.Y. July 23, 2012) (denying stay for lack of good cause where petitioner was aware of underlying facts for more than two and a half years prior to filing habeas petition).

---

and not indicated on [his] rap sheet," leaving "no reason for the [prosecution] to be aware of these arrests." *Id.* at 3. The trial court further concluded that, in any event, Fernandez was not prejudiced by any delay in obtaining Santos's arrest records because "defense counsel already was given the opportunity to extensively question [Santos] concerning [Santos's] own criminal conduct." *Id.*

15

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Pitman's Report and Recommendation in its entirety. The Court denies the petition for a writ of habeas corpus, denies the motion for leave to amend the petition, and denies the motion for a stay of this petition. Because Fernandez has not made a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).

The Court notes that the transcripts of Fernandez's state-court proceedings have not been publicly filed. No later than June 7, 2017, Respondent shall file these transcripts on the public docket.

The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated: May 31, 2017
New York, New York

_____
Ronnie Abrams
United States District Judge